# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-8017

LG DISPLAY CO., LTD., et al.,

*Petitioners*,

*v.*

LISA MADIGAN, Attorney General of the State of Illinois,

*Respondent.*

Petition for Permission to Appeal
from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cv-05720—**Robert M. Dow, Jr.**, *Judge.*

SUBMITTED JULY 18, 2011—DECIDED NOVEMBER 18, 2011

Before FLAUM, WILLIAMS, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* The Illinois Attorney General filed suit in the Circuit Court of Cook County against eight manufacturers of LCD panels for violations of the Illinois Antitrust Act ("IAA"). The complaint alleges that the defendants unlawfully inflated prices on LCD products sold to the state, its agencies, and residents and requests injunctive relief, civil penalties, and treble statutory

damages for the state as a purchaser and, as *parens patriae*, for harmed residents. The defendants removed the case to federal court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. The Attorney General moved to remand and argued that the suit did not meet CAFA requirements and that, therefore, the district court did not have jurisdiction. The district court agreed and granted the motion to remand. The defendants now petition for permission to appeal the remand order.

In most situations, "[a]n order remanding a case . . . is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d); *Anderson v. Bayer Corp.*, 610 F.3d 390, 394 (7th Cir. 2010). The defendants argue, however, that the Attorney General's *parens patriae* suit is actually a disguised "class action" or "mass action" (and otherwise meets CAFA requirements) and so, under CAFA, this court may consider an appeal of the remand order. 28 U.S.C. § 1453(c). In addition, the defendants argue we should grant their petition because this case presents unsettled CAFA-related questions. Specifically, they note we have yet to decide whether the "represented parties" in a *parens patriae* action—in this case, Illinois purchasers of LCD panels—are the real parties in interest (and so may satisfy CAFA's minimal diversity requirement) and whether such an action may be removed as a class action or mass action.

As we explain below, we disagree with the defendants' characterization of the case as a disguised class action or mass action and, in this case, we are not convinced that the petition should be granted because of its novelty.

To reach a functionally equivalent result—that a *parens patriae* action such as this is not removable under CAFA—at least two other circuits have granted petitions to appeal and then denied the appeals on the merits. *Washington v. Chimei Innolux Corp.*, ___ F.3d ___, No. 11-16862, 2011 WL 4543086 (9th Cir. October 3, 2011); *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 179 (4th Cir. 2011). In this case, however, the proper course is to deny the petition for lack of jurisdiction. *See Lincoln Nat'l Life Ins. Co. v. Bezich*, 610 F.3d 448, 449 (7th Cir. 2010); *Anderson*, 610 F.3d at 394. On limited occasions we have concluded that we have jurisdiction to grant a petition in a CAFA case that presents a significant novel issue. *See Koral v. Boeing Co.*, 628 F.3d 945, 946 (7th Cir. 2011) (citing CAFA cases where petitions for appeal have been granted "because the appeal presents novel issues"); *Brullard v. Burlington Northern Santa Fe Ry.*, 535 F.3d 759, 761 (7th Cir. 2008) (granting a petition because of a "novel" CAFA issue that had "not been addressed in this or any other circuit"). But as the discussion below and the recent decisions from the Fourth and Ninth Circuits illustrate, the novelty of this case is superficial. And because the jurisdictional inquiry overlaps with the merits, that is, whether this case falls under CAFA, the fact that our approach is technically different from what the Ninth and Fourth Circuits have done in similar cases does not put us at odds with them. To the contrary, we find their discussions of the relationship between *parens patriae* actions and CAFA helpful and persuasive.

Before getting to the reasons why this *parens patriae* suit is not a class action or mass action under CAFA, a little

background on *parens patriae* suits will be helpful. The "parent of the country" action is rooted in the English common-law concept of the "royal prerogative," which included the power of the king to act "as guardian of persons under legal disabilities to act for themselves." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 257 (1972). In the United States the "royal prerogative" and the king's *parens patriae* power passed to the states, and the scope of *parens patriae* suits has expanded beyond what existed in England. *Id.* A state will have standing to sue as *parens patriae* where it can "articulate an interest apart from the interests of particular private parties" and "express a quasi-sovereign interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* 458 U.S. 592, 607 (1982). A state, for example, "has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general*." Id.* To decide whether a state's interest pertains to "its residents in general" as opposed to an "identifiable group of individual residents," a court should consider the direct and indirect effects of the alleged injury. *Id.* An "alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as *parens patriae* [if] the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Id.* Although the American concept of *parens patriae* is broad, it "does not involve the States stepping in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves." If that is the case, "*i.e.*, if the State is only a nominal party without a real interest of its own—then it will not have standing under the *parens patriae* doctrine." *Id.* at 600.

We have jurisdiction over this *parens patriae* action only if it is also (or actually) a "class action" or "mass action." As defined by CAFA, a class action is "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). A mass action is "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]." 28 U.S.C. § 1332(d)(11)(B)(i).

The district court reasoned that this suit cannot be a class action because it was not filed under Rule 23 of the Federal Rules of Civil Procedure or the state equivalent, 735 ILCS 5/2-801, but is instead a *parens patriae* suit under the IAA. The defendants maintain that because the IAA provides that "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General, who may maintain an action parens patriae," 740 ILCS 10/7, the Illinois legislature "considers this *parens patriae* authority as a species of class action."

But the phrasing of the IAA is insufficient to support a conclusion that the Attorney General's suit is really a class action. A class action must be brought under

Rule 23 or the state equivalent. This case was brought under the IAA, not Rule 23 or 735 ILCS 5/2-801. A class action must be brought by a "representative person." This case was brought by the Attorney General, not by a representative of a class. A class action must be brought *as a class action*. This case was brought as a *parens patriae* suit under the IAA, which does not impose any of the familiar Rule 23 constraints. The IAA does not impose, for example, requirements for adequacy, numerosity, commonality, or typicality. Procedurally, Rule 23 and the IAA are entirely different beasts.

This conclusion is consistent with recent decisions from the Fourth and Ninth Circuits. In *CVS Pharmacy*, 646 F.3d at 172, the Fourth Circuit held that a *parens patriae* suit brought by the Attorney General of West Virginia alleging violations of the state generic drug statute and state credit protection act was not removable as a class action because the West Virginia laws did not include provisions typical of a class action "addressing the adequacy of representation, numerosity, commonality, and typicality." In *Chimei Innolux Corp.*, 2011 WL 4543086, the Ninth Circuit reached the same conclusion about *parens patriae* suits brought as by the Attorney Generals of Washington and California alleging that defendants conspired to fix prices on products containing LCD panels. In affirming the district court's remand order, the Ninth Circuit expressly joined the Fourth Circuit and explained: "The question under CAFA is whether the state statute authorizes the suit 'as a class action.' The statutes at issue here do not." *Id.* at *3.

So, this case is not a class action. As a fallback, defendants argue that this case is a mass action because "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). Here, however, only the Illinois Attorney General makes a claim for damages (among other things), precisely as authorized by the IAA. By the plain language of § 1332, this suit is not removable as a mass action. *Anderson*, 610 F.3d at 393. Moreover, a suit is not a mass action under 28 U.S.C § 1332(d)(11)(B)(ii)(III) if "all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action." By the plain language of that provision, too, this case is not a mass action.

Against this, the defendants argue that if we consider what's *really* going on in this suit, we will see that Illinois resident purchasers are the real parties in interest and, building on that premise, conclude that the 100 or more plaintiffs, minimal diversity, and amount-in-controversy requirements are met. To reach the conclusion that Illinois resident purchasers are the real parties in interest, however, the petitioners ask us to separately determine the parties in interest in each of the Attorney General's claims. They concede that the state is the real party in interest for the enforcement-related claims, but they deny that the state is the real party in interest for the damages claims asserted on behalf of Illinois consumers.

The petitioners find support for that kind of claim-by-claim approach in *Louisiana ex rel. Caldwell v. Allstate Insurance Co.*, 536 F.3d 418 (5th Cir. 2008), and *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441 (E.D. Pa. 2010). In *Allstate*, the Fifth Circuit affirmed the denial of a motion to remand a suit filed by the State of Louisiana "along with counsel from a number of private law firms" against several insurance companies for alleged violations of the Louisiana Monopolies Act. 536 F.3d at 422. Although the suit was brought as a *parens patriae* action, the defendants argued that the suit was actually a class action or mass action under CAFA because Louisiana sought treble damages for Louisiana insurance policyholders. *Id.* at 423. The district court pierced the pleadings to determine the real nature of Louisiana's claims—an action that, the Fifth Circuit noted, Louisiana did not object to on appeal—and concluded that removal was appropriate because Louisiana policyholders were the real parties in interest. *Id.* at 425. In affirming the district court's decision, the Fifth Circuit emphasized that, "[i]n passing CAFA, Congress emphasized that the term 'class action' should be defined broadly to prevent 'jurisdictional gamesmanship.'" *Id.* at 424.

In *Comcast*, a Pennsylvania district court concluded that a *parens patriae* antitrust and consumer protection suit brought by West Virginia was removable as a class action under CAFA. Examining West Virginia's interest in the suit to determine whether CAFA's minimal diversity requirement had been met, the district court followed *Allstate*'s claim-by-claim approach and deter-

mined that there was minimal diversity because West Virginia consumers were the real parties in interest for West Virginia's treble damages claim. 705 F. Supp. 2d at 447, 450. The district court believed that claim-by-claim analysis "is most consistent with Congress's intent under CAFA to expand federal jurisdiction over class actions." *Id.*

In this case, the district court rejected the claim-by-claim analysis used in *Allstate* and *Comcast*. The district court was in good company; claim-by-claim analysis has been questioned by a number of courts. *See In re TFT-LCD (Flat Panel) Antitrust Litig.,* MDL No. 1827, 2011 WL 560593, *3 (N.D. Cal. Feb. 15, 2011); *Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.,* 686 F. Supp. 2d 942, 945-46 (E.D. Mo. 2010); *Illinois v. SDS West Corp.,* 640 F. Supp. 2d 1047, 1050-53 (C.D. Ill. 2009). Instead, the district court "look[ed] to the complaint as a whole" and concluded that the State is the real party in interest. We agree with the district court's approach. Whether a state is the real party in interest in a suit "is a question to be determined from the 'essential nature and effect of the proceeding.' " *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 250 (7th Cir. 1981) (quoting *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464 (1945)). The courts in *Allstate* and *Comcast* did not adopt the claim-by-claim approach based on any language in CAFA itself, nor is there any such language to be found. The Fifth Circuit rationalized its claim-by-claim approach as consistent with Congress' intent to broaden federal jurisdiction over class actions through CAFA. But, as Judge Illston pointed out in her order remanding the *parens patriae* actions filed by the State Attorney Generals of California and Washington,

just because CAFA was meant to expand federal courts' jurisdiction over class actions, it does not follow that "federal courts are required to deviate from the traditional 'whole complaint' analysis when evaluating whether a State is the real party in interest in a *parens patriae* case." *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 2011 WL 560593, *3. *See also First Bank v. DJL Prop., LLC*, 598 F.3d 915, 917 (7th Cir. 2010) ("It does not follow from the fact that the 2005 Act expands the set of removable cases that it must use 'defendant' in a novel way.").

Restraint is particularly appropriate in light of the Supreme Court's directive that removal statues should be "strictly construed," *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002), and the sovereignty concerns that arise when a case brought by a state in its own courts is removed to federal court. As the Supreme Court has noted, "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 (1983). *See also CVS Pharmacy*, 646 F.3d at 178 ("While it is true that West Virginia voluntarily entered into its own courts to enforce its laws, it did not voluntarily consent to removal of its case to a federal court, and a federal court should be most reluctant to compel such removal, reserving its constitutional supremacy only for when removal serves an overriding federal interest.").

The district court correctly determined that this case is not a class action or mass action under CAFA. We

therefore lack jurisdiction over an appeal from the district court's remand order. The petition for leave to appeal is DENIED.